**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| In re: ) | |
| ) | |
| TAMARA FAYE MILLER, ) | Case No. 13-30930-DOT |
| ) | Chapter 13 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| ESSEX BANK, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | |
| ) | |
| TAMARA FAYE MILLER and ) | |
| ROBERT E. HYMAN, TRUSTEE, ) | |
| ) | |
| Respondents. ) | |
| ) | |

**ESSEX BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**AND MEMORANDUM OF POINTS AND AUTHORITIES**

Essex Bank, a Virginia banking corporation (formerly known as Bank of Powhatan, as reflected in the records of the Virginia State Corporation Commission) (hereafter, "Essex"), by counsel, respectfully moves the Court for entry of an order granting Essex relief from the automatic stay against Tamara Faye Miller (the "Debtor") and certain real property of the

Counsel for Essex Bank
David R. Ruby, Esquire (VSB #22703)
William D. Prince, IV Esquire (VSB #77209)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
Telephone: (804) 698-6220
Facsimile: (804) 780-1813
Email: druby@t-mlaw.com
Email: wprince@t-mlaw.com

bankruptcy estate in this case pursuant to § 362(d) of the United States Bankruptcy Code (the "Code"). In connection with the foregoing, Essex respectfully states as follows:

### Jurisdictional Statement

1.     This Motion is made pursuant to 11 U.S.C. § 362(d), Fed. R. Bankr. P. 4001(a) and 9014 and Local Bankruptcy Rules 4001(a)-1 and 5005-1(D)(3).

2.     The Court possesses subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

4.     This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

### Factual Background

The Debtor's First Bankruptcy Petition filed in November 2012.

5.     On November 29, 2012, the Debtor filed a voluntary petition under Chapter 13 of the Code (the "First Petition") – Case # 12-36793-KRH. The Debtor failed to file a proposed Chapter 13 Plan within 14 days after commencement of the case. Moreover, the Debtor's Motion to Extend Time to file a Chapter 13 Plan was not timely filed pursuant to Local Bankruptcy Rule 3015-2(C)(3), and the Court notified the Debtor that a hearing was required.

6.     On January 16, 2013, the Court dismissed the First Petition for failure to timely file and distribute a Chapter 13 Plan within the time period set forth in Local Bankruptcy Rule 3015-2(C)(1). A true and accurate copy of the Order of Dismissal is attached hereto as **Exhibit A**.

The Debtor's Second Bankruptcy Petition filed in February 2013.

7. On February 22, 2013, the Debtor filed a second voluntary petition under Chapter 13 of the Code (the "Second Petition") – Case # 13-30930-DOT. On March 8, 2013, the Debtor filed a proposed Chapter 13 Plan (the "Plan") and related motions.

The Debtor's Indebtedness.

8. The Debtor is indebted to Essex on account of a Promissory Note owned by Essex dated June 13, 2008 (the "Note") in the principal amount of $300,000.00. A true and accurate copy of the Note is attached hereto as **Exhibit B**.

9. The Debtor's obligations under the Note are secured by a first priority deed of trust lien against real property located at: 9441 Deer Stream Drive, Mechanicsville, Virginia 23116 (the "Collateral Property"), pursuant to a timely recorded deed of trust (the "Deed of Trust") dated June 13, 2008. A true and accurate copy of the Deed of Trust is attached hereto as **Exhibit C**.

10. The Deed of Trust was properly recorded at Deed Book 2919, Page 479 on June 16, 2008 in the Office of the Clerk of the Circuit Court for the County of Hanover, Virginia.

11. The Deed of Trust also encumbered certain real property located at: 234 West River Road, Aylett, Virginia 23009, consisting of 50.66 acres of land, 48.86 acres being held within King William County, Virginia and 1.80 acres being within Caroline County, Virginia. At the request of Essex, a substitute trustee conducted a foreclosure sale on January 18, 2011 (the "West River Road Foreclosure Sale") in accordance with the terms of the Deed of Trust. A credit was applied in February 2011 against the Debtor's current indebtedness pursuant to the Note in the amount of $244,609.61. A true and accurate copy of the Note showing the credit against the indebtedness is attached hereto as **Exhibit D**.

12.     Pursuant to the terms of the Note, the Debtor's monthly payment is $2,390.32.

13.     As of March 15, 2013, the Debtor is in arrears by approximately thirty (30) months in payment on the Note. Thus, the last payment made by the Debtor was on September 13, 2010. As of March 15, 2013, arrearages on the entire Note totaled approximately $71,709.60.[1] However, the credit applied against the Debtor's indebtedness pursuant to the West River Road Foreclosure Sale reduced the interest accrual, and was credited to the Debtor's principal balance on the Note in February 2011. Thus, current arrearages have been offset by the $244,609.61 credit attributable to the West River Road Foreclosure Sale. Since the credit was applied to the Debtor's indebtedness in February 2011, the Debtor has not made any payments on the Note. In addition, no payments were made subsequent to the filing of the First Petition or the Second Petition.

14.     The current principal balance on the Note is $53,078.97 (the "Principal Balance").[2] The accrued interest, arrearages and late charges applicable to the Principal Balance is currently $10,310.35. A summary of the loan made by Essex to the Debtor is attached hereto as **Exhibit E**.

15.     As of March 15, 2013, the Debtor was indebted to Essex on account of the Note in the amount of $63,389.32 (the "Indebtedness").[3]

16.     Prior to the filing of the Second Petition, the Note had matured by acceleration on account of the Debtor's default.

---

[1] Arrearages continue to accrue.
[2] Exclusive of interest, attorneys' fees and other charges, for which the Debtor is contractually liable and which continue to accrue.
[3] The Indebtedness includes the Arrearages and the Principal Balances. Exclusive of attorneys' fees, for which the Debtor is contractually liable. Interest, attorneys' fees and other charges, for which the Debtor is contractually liable, will continue to accrue.

17. The Debtor's Schedules, specifically Schedule A, reflect a purported value for the Collateral Property of $299,773.00. However, the Debtor's Schedule A incorrectly indicates that no creditor claims a secured interest in the Collateral Property. Moreover, the Debtor's Schedule F incorrectly lists Essex as an unsecured, non-priority creditor. Essex is also not listed as a creditor holding a secured claim in the Debtor's Schedule D.

18. The strategic timing of the First Petition and the Second Petition was extraordinary. Prior to the filing of the First Petition, Essex initiated foreclosure proceedings with respect to the Collateral Property (the "First Foreclosure Attempt") pursuant to the terms of the Note and the Deed of Trust. The First Foreclosure Attempt was scheduled for November 30, 2012. On November 29, 2012, the day before the foreclosure sale of the Collateral Property, the Debtor filed the First Petition, thereby halting the foreclosure process.

19. After the First Petition was dismissed by the Court for failure to timely file a Chapter 13 plan, Essex initiated foreclosure proceedings a second time (the "Second Foreclosure Attempt") pursuant to the terms of the Note and the Deed of Trust. A foreclosure sale was scheduled to take place on February 27, 2013. However, on the eve of the foreclosure sale of the Collateral Property, the Second Petition was filed by the Debtor on February 22, 2013 – thus halting foreclosure proceedings a second time.

20. The Chapter 13 Plan mistakenly indicates that the Debtor has (i) no outstanding secured debt and (ii) no mortgage loans secured by real property constituting the Debtor's primary residence. The Chapter 13 Plan states that the Debtor does not plan to surrender her interest in any real property securing the claims of any creditor. Finally, the Plan fails to specify adequate protection payments to Essex.

**Argument**

A. **Essex is Entitled to Relief From the Automatic Stay For Cause Based on the Debtor's Failure to Provide Adequate Protection.**

21. 11 U.S.C. § 362(d) of the Code provides, in pertinent part:

On request of a party in interest ... the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay --

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; . . .

22. Essex is entitled to relief from stay for cause, as the Debtor has failed to provide Essex with any adequate protection of its interest in the Collateral Property.

23. Essex is not listed as a secured creditor in the Debtor's Schedules. Notwithstanding the Note and the Deed of Trust, the Debtor appears to claim that Essex is an unsecured creditor, with no security interest in the Collateral Property whatsoever. The Plan does not even list Essex as holding a mortgage loan secured by real property constituting the Debtor's primary residence. As such, the Plan does not provide for regular monthly contractual payments to be made to Essex. The Plan fails to provide for the curing of existing arrearages over the course of the Chapter 13 Plan. This is the definition of "lack of adequate protection" for the purposes of granting relief from stay under 11 U.S.C. § 362(d)(1).

24. The Debtor has been in default under the terms of the Note since October 2010. Given the fact that the Debtor has been in default on its payment obligations for over two years, Essex lacks adequate protection with regard to its secured interest in the Collateral Property.

25. Furthermore, the Plan fails to specify adequate protection payments to Essex.

26. Essex is also is concerned that the Indebtedness is increasing over time, and that the Collateral Property is at risk. The Plan does not provide for the payment of taxes and

insurance on the Collateral Property, or for the payment of necessary and routine repairs to maintain the Collateral Property.

27. Accordingly, Essex's interest in the Collateral Property is not being adequately protected, and the Debtor's failure to provide adequate protection constitutes "cause" to grant Essex relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

**B. Essex is Entitled to Relief From the Automatic Stay under 11 U.S.C. § 362(d)(4).**

28. 11 U.S.C. § 362(d)(4) states:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -
   (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either -
   (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
   (B) multiple bankruptcy filings affecting such real property.

29. Thus, 11 U.S.C. § 362(d)(4) sets forth, as one ground for relief from the automatic stay with respect to an act by a secured creditor against real property, a finding by the court that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved multiple bankruptcy filings affecting such real property. *See In re Nwonwu*, Case No. 11-12608, 2011 Bankr. LEXIS 3124, at *11-12 (Bankr. E.D. Va. Aug. 12, 2011).

30. To obtain relief from the automatic stay under § 362(d)(4), the creditor "must establish three elements: (1) that [Debtor] engaged in a scheme, (2) to delay, hinder, [or] defraud the creditor, and (3) which involved . . . multiple filings." *In re Davis*, 2010 Bankr. LEXIS 4619, at *11-12 (Bankr. D.S.C. Oct. 12, 2010). A "scheme," for purposes of § 362(d)(4) "is an

7

intentional artful plot or plan to delay, hinder [or] defraud creditors." *In re Wilke*, 429 B.R. 916, 922 (Bankr. N.D. Ill. 2010).

31. The Debtor has strategically used multiple bankruptcy filings to prevent Essex from collecting on the Note and foreclosing on the Collateral Property. The Debtor has done this on two occasions. First, the Debtor forestalled the First Foreclosure Attempt by filing the First Petition on November 29, 2012 – <u>the day before the scheduled foreclosure sale</u>. The Debtor's "scheme" is further evidenced by the fact that her First Petition was dismissed by the Court for failure to timely file and distribute a Chapter 13 Plan within the time period set forth in Local Bankruptcy Rule 3015-2(C)(1). Simply put, the Debtor did not make a good faith attempt to comply with the requirements of the Code. The Debtor filed the First Petition in bad faith solely to prevent the foreclosure sale of the Collateral Property one (1) day before the First Foreclosure Attempt.

32. The Debtor's intentional "scheme" to delay, hinder or defraud Essex is further demonstrated by the filing of the Second Petition. The Second Petition was filed on February 27, 2013 – merely five (5) days before the Second Foreclosure Attempt scheduled for February 25, 2013.

33. Without question, these multiple bankruptcy filings on the eve of scheduled foreclosure sales were part of an intentional plan to delay and/or hinder Essex's attempts to enforce its contractual rights under the Note and Deed of Trust. Put simply, the First Petition and the Second Petition were filed solely to prevent the foreclosure sales from taking place. *See In re The Action Team, LLC*, No. 12-02086-jw, 2012 Bankr. LEXIS 1854, at *5 (Bankr. D.S.C. April 25, 2012) (finding that the filing of multiple bankruptcy petitions on the eve of foreclosure sales were in bad faith to solely forestall the foreclosure sales).

34. By the same token, the Debtor's scheme to delay, hinder or defraud Essex is further shown by the Debtor's own Schedules and the Plan. Essex is not even listed as a secured creditor in the Schedules, and the Plan does not provide for any payments to be made to Essex, whether contractual, arrearages or otherwise.

35. Essex is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4). Essex is a secured creditor with regard to the Collateral Property – which is the Debtor's primary residence. The filing of the First Petition and the Second Petition was part of an intentional scheme to delay, hinder or defraud Essex by preventing Essex from foreclosing on the Collateral Property pursuant to the terms of the Note and Deed of Trust. The First Petition was filed one (1) day before the First Foreclosure Attempt, and was not filed in good faith. The Second Petition was filed merely five (5) days before the Second Foreclosure Attempt – again on the eve of the foreclosure sale of the Collateral Property.

**Relief Requested**

36. Essex seeks relief from the automatic stay pursuant to 11 U.S.C. 362(d). The Debtor has defaulted on the Note made by Essex, and the Debtor's Plan does not provide for adequate protection of Essex's interest in the Collateral Property. Moreover, the multiple bankruptcy filings affecting the Collateral Property were part of a scheme to delay, hinder or defraud Essex.

37. Fed. R. Bankr. P. 4001(a)(3) provides that an order granting a motion for relief from the automatic stay is stayed until the expiration of fourteen (14) days after the entry of the order, unless the Court orders otherwise. Therefore, Essex respectfully requests that the Court direct any order granting the relief requested not be subject to the stay provided for in Fed. R. Bankr. P. 4001(a)(3).

WHEREFORE, Essex Bank respectfully requests the Court enter an Order: (i) lifting the automatic stay imposed by 11 U.S.C. § 362(a) as to Essex Bank; (ii) permitting Essex Bank to seize, demand, take possession of, take control of, liquidate, sell, effect transfers of, and foreclose on its lien; (iii) take action and avail itself of its rights and remedies against the Collateral Property in accordance with the Note, Deed of Trust and its other contractual rights and applicable state law; (iv) waiving the fourteen (14)-day stay of Fed. R. Bankr. P. 4001(a)(3) to allow Essex Bank to proceed immediately upon entry of the Order; and (v) granting such other relief as the Court shall deem just and proper.

Respectfully submitted,

ESSEX BANK

By:   /s/ William D. Prince, IV
      Counsel

David R. Ruby, Esquire (VSB #22703)
William D. Prince, IV, Esquire (VSB #77209)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
Telephone: (804) 698-6220
Facsimile: (804) 780-1813
Email: druby@t-mlaw.com
Email: wprince@t-mlaw.com
*Counsel for Essex Bank*

# CERTIFICATE OF SERVICE

   I hereby certify that on the 20th day of March, 2013, a true and accurate copy of the foregoing Motion was served via First Class U.S. Mail (postage prepaid), via e-mail or via the Electronic Case Filing (ECF) system, as appropriate and as indicated, on the following parties:

Robert B. Van Arsdale, Esquire*
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia  23219
Robert.B.Van.Arsdale@usdoj.gov

Tamara Faye Miller
9441 Deer Stream Drive
Mechanicsville, VA 23116
*Pro se Debtor*

Robert E. Hyman, Esquire*
P.O. Box 1780
Richmond, VA 23218-1780
*Chapter 13 Trustee*

                  /s/ William D. Prince, IV
                   William D. Prince, IV

[*Indicates service by ECF or e-mail.  All others served by First Class U.S. Mail, postage prepaid.]